IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRETT ALAN HARTIGAN,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    *Defendant.*

Case No. 14-cv-4078-EFM

ORDER

    Plaintiff Brett Hartigan seeks review of a final decision by Defendant, the Commissioner of Social Security ("Comissioner") denying his application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectfully. Hartigan alleges that the administrative law judge ("ALJ") erred in weighing the opinions of Hartigan's treating physicians, discounting Hartigan's credibility, and assessing his residual function capacity ("RFC"). Having reviewed the record, and for the reasons described below, the Court affirms the order of the Commissioner.

    **I.**    **Factual and Procedural Background**

    Brett Hartigan was born on September 15, 1967. On August 1, 2011, he filed applications for disability insurance benefits and supplemental security income alleging disability since August 2007 due to upper extremity disorders, anxiety, depression, high blood

pressure, and migraines. Hartigan's applications were denied initially and upon reconsideration. He then asked for a hearing before an ALJ.

ALJ Timothy Stueve conducted an administrative hearing on September 18, 2012. Hartigan was represented by counsel at the hearing, and he testified about his medical conditions. The ALJ also heard from a vocational expert.

On January 3, 2013, the ALJ issued her decision, finding that Hartigan engaged in substantial gainful activity from August 2007 to September 2008 but that there was a twelve-month continuous period from the alleged disability onset date during which Hartigan did not engage in substantial gainful activity. The ALJ next found that Hartigan suffered from the following severe impairments: arthritis, history of right shoulder injury, cervical spondylosis, and left-arm myofascial pain. The ALJ determined that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> The ALJ determined that Hartigan had the RFC
>
> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally lift 10 pounds. He can sit for approximately six hours in an eight-hour day, and he can stand or walk for approximately two hours in an eight-hour day, with normal breaks. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes or scaffolds. He can perform occasional overhead reaching with the dominant, right, upper extremity.

The ALJ then found that Hartigan could not perform his past relevant work as a dump truck driver or salvage laborer. However, considering Hartigan's age, education, work experience, and RFC, the ALJ determined that jobs existed in the national economy that Hartigan could perform. Thus, the ALJ concluded that Hartigan had not been under a disability from August 1, 2007, through the date of his decision.

Given the unfavorable result, Hartigan requested reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Hartigan's request on June 30, 2014. Accordingly, the ALJ's January 2013 decision became the final decision of the Commissioner.

Hartigan filed a Complaint in the United States District Court for the District of Kansas. He seeks reversal of the ALJ's decision without a remand to the Commissioner for a new administrative hearing. Because Hartigan has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if he can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[10]

---

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11]  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III.   Analysis

Hartigan asserts three arguments as to why the ALJ's decision should be reversed for an award of benefits.  First, he argues that the ALJ erred in his treatment of the opinions of Hartigan's treating physicians.  Second, he argues that the ALJ erred in discounting his credibility.  And, third, he argues that the ALJ erred in formulating his RFC.  The Court will address each of these arguments below.

**A.   Evaluation of Medical Opinions**

Hartigan claims that the ALJ failed to properly weigh the opinions of his treating physicians Dr. Kiracofe and Dr. Dall.  The ALJ has a duty to consider all the medical opinions in the record and discuss the weight assigned to each opinion.  To determine the exact weight to assign a treating source's opinion, the ALJ must follow a two-step inquiry.[14]  First, the ALJ must

---

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

[14] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

decide whether to give the opinion controlling weight.[15] The ALJ will give controlling weight to a treating source opinion if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.[16] If the treating physician's opinion is not entitled to controlling weight, then the ALJ must proceed to the second step and determine if the opinion "should be rejected altogether or assigned some lesser weight."[17] At this step, the ALJ must consider the factors specified in 20 C.F.R. §§ 404.1527(c) and 416.927(c) for weighing medical opinions.[18] These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.[19] Although the ALJ is not required to discuss all six of these factors,[20] the ALJ must "give good reasons, tied to the factors specified in the cited regulations . . . , for the weight assigned" a treating source opinion.[21]

### 1. Dr. Kiracofe

Hartigan first argues that the ALJ erred in giving Dr. Kiracofe's opinion only "some" weight. Dr. Kiracofe opined that Hartigan is poorly employable due to his left upper extremity dysfunction and chronic right shoulder, neck, and back pain. He opined that Plaintiff could work

---

[15] *Id.*

[16] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[17] *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

[18] *Id.*

[19] *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

[20] *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

[21] *Krauser*, 638 F.3d at 1330 (citation omitted).

on a limited basis but that such work would require significant flexibility to change position on a regular basis.  Dr. Kiracofe completed a "Medical Opinion RE:  Ability to do Work-Related Activities Form" on April 10, 2012, indicating that Hartigan could lift less than ten pounds, stand and walk less than two hours in an eight-hour day, and sit less than two hours in an eight-hour day.  The ALJ made the following finding regarding Dr. Kiracofe's opinion:

> I give this opinion some weight, as the claimant does have limitations on lifting, sitting and standing due to the symptoms of his impairments.  However, Dr. Kiracofe's opinion occurred shortly after the claimant sustained an injury to his left, upper extremity and the restrictions are not likely to last 12 months duration.  In addition, it is noted that Dr. Kiracofe examined the claimant only one time and has not obtained a longitudinal picture of the claimant's medical condition.

According to Hartigan, the ALJ erred in finding (1) that Hartigan's upper extremity restrictions were not likely to last twelve months; (2) that Dr. Kiracofe had only seen Hartigan once; and (3) that Dr. Kiracofe was not aware of Plaintiff's medical history.  Hartigan asserts that there is no evidence in the record stating that his upper extremity restrictions would not last twelve months in duration.  He further asserts that Dr. Kiracofe was well-aware of his medical history, as he cited his past history in making his opinion and he referred Hartigan to a pain specialist who reported his findings back to Dr. Kiracofe.

The Court disagrees. It is error to give an opinion controlling weight if it is inconsistent with other substantial evidence in the record.[22]  Dr. Kiracofe examined Hartigan approximately three months after his January 2012 left arm injury and repair, for which another physician—Dr. Park—treated him.  Dr. Park noted only mild finger flexion and good vascular functioning,

---

[22] *See Watkins*, 350 F.3d at 1300 (citing Soc. Sec. Rul. 96-2 p, 1996 WL 374188, at *2 (Soc. Sec. Admin. July 2, 1996)).

concluded that the arm was viable overall, and that Hartigan was doing well overall. This evidence is inconsistent with Dr. Kiracofe's findings.

Furthermore, the ALJ correctly discounted Dr. Kiracofe's opinion based on the duration and frequency of his treatment relationship with Hartigan. While Dr. Kiracofe may have cited portions of Hartigan's medical history in the Medical Opinion RE form, the record shows that he only treated him once and that appointment was, at least in part, for the purpose of completing disability paperwork. Generally, the longer a treating source has treated a claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the source's medical opinion.[23] Furthermore, the fact that Dr. Kiracofe referred Hartigan to Dr. Schuster is only further evidence of Dr. Kiracofe's limited treatment.

The Court does find it troubling that the ALJ did not cite to any evidence in the record regarding his finding that Hartigan's restrictions were not likely to last twelve months duration. However, the ALJ did not entirely reject Dr. Kiracofe's opinion or give it little weight. Instead, the ALJ gave Dr. Kiracofe's opinion "some" weight, which shows that he did take some of Dr. Kiracofe's opinions into consideration in formulating the RFC. Overall, the record reveals that Dr. Kiracofe's findings are inconsistent with Dr. Park's findings and that Dr. Kiracofe's relationship with Hartigan was very brief for the period in question. Therefore, the ALJ's decision to give Dr. Kiracofe's opinion "some weight" is supported by substantial evidence in the record.

---

[23] *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

### 2. Dr. Dall

Hartigan next argues that the ALJ erred in giving Dr. Dall, Hartigan's treating chiropractor, little weight. Dr. Dall opined that Hartigan can lift and carry ten pounds on an occasional basis, lift and carry less than ten pounds on a continual basis, and stand and walk for about two hours in an eight-hour day. Dr. Dall further opined that Hartigan would miss work more than three times per month due to his impairments and that due to his history of experiencing severe trauma multiple times and having multiple surgeries, Hartigan is unable to sustain employment. The ALJ considered Dr. Dall's opinions but found that "chiropractic opinions are not acceptable medical sources, so little weight is given to [Dr. Dall's] statement." In addition, the ALJ found that Dr. Dall's findings on Hartigan's ability to function were not consistent with the findings of the physical consultative examination.

Dr. Dall is not an "acceptable medical source" within the meaning of the regulations.[24] Therefore his opinion is not entitled to consideration as a "medical opinion" under the regulations.[25] However, his opinion can be considered to show the severity of Hartigan's limitations and how they affect his ability to work.[26] Hartigan does not dispute that Dr. Dall is not an acceptable medical source. Instead, he argues that the ALJ erred in discounting Dr. Dall's opinion because the ALJ did not indicate which part of the physical consultative exam findings should be afforded greater weight than Dr. Dall's RFC. The Court disagrees.

---

[24] 20 C.F.R. §§ 404.1513(a), 416.913(a).

[25] *See Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013).

[26] *Id.*

"[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision."[27] It is enough that "the discussion of the evidence in the determination or decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning."[28] Here, earlier in his decision, the ALJ discussed Hartigan's alleged impairments and noted the findings of the consultative physical exam. Specifically, the AJL noted that these exam findings showed, in part, that Hartigan's spine condition is essentially normal; that Hartigan has never received an epidural injection; that he did not require an assistive device at the exam; that his grip strength and dexterity are preserved without reflex, sensory, or motor findings; that Hartigan maintains the ability to perform fine manipulation; and that he has thirty-five pounds of grip strength in the right hand. This analysis by the AJL is sufficient for the Court to follow his reasoning with regard to Dr. Dall's opinion. Therefore, the Court finds no error in the ALJ's discussion of Dr. Dall's opinion and that the ALJ's conclusions were supported by substantial evidence.

## B.     The ALJ's Credibility Analysis

Plaintiff alleges that the ALJ erred by failing to conduct a proper credibility analysis as required by Social Security Ruling 96-7p[29] and *Luna v. Bowen*.[30] "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by

---

[27] Soc. Sec. Rul. 06-03P, 2006 WL 2329939, at *6 (Soc. Sec. Admin. Aug. 9, 2006).

[28] *Id.*; *see also Bowman*, 511 F.3d at 1275 (requiring that the ALJ's discussion of other source evidence be sufficiently clear that the court can "follow the adjudicator's reasoning" (internal quotation marks omitted)).

[29] Soc. Sec. Rul. 96-7P, 1996 WL 374186, at *2 (Soc. Sec. Admin. July 2, 1996).

[30] 834 F.2d 161 (10th Cir. 1987).

substantial evidence.[31] The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[32] However, notwithstanding the deference generally given to an ALJ's credibility determination, " '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' "[33]

In evaluating a disability claim based on pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[34] If so, the ALJ must consider the relationship between the impairment and the alleged non-exertional limitation.[35] If a loose nexus exists, the ALJ must then consider all the evidence, both objective and subjective, in determining whether a claimant's limitation is disabling.[36] Factors that may be relevant in assessing the claimant's testimony include the levels of medication prescribed and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other

---

[31] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quotation omitted); *Hackett v. Barnhart*, 395 F.3d 1169, 1173 (10th Cir. 2005).

[32] *Oldham*, 509 F.3d at 1257-58 (citation omitted).

[33] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1995)).

[34] *Luna*, 834 F.2d at 163; *Williams v. Bowen*, 844 F.2d 748, 753 (10th Cir. 1988).

[35] *Luna*, 834 F.2d at 164.

[36] *Id*.

witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[37]

With regard to Hartigan's credibility, the ALJ concluded,

[a]fter careful consideration of the evidence, . . . that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The ALJ's credibility analysis in this case is quite extensive. The ALJ cites numerous medical records supporting his finding that the objective medical evidence does not support the severity of Hartigan's complaints to the extent alleged. For example, the ALJ noted that x-rays of Hartigan's cervical spine show that his discs are well-maintained and that while he has some straightening, his condition is essentially normal. In addition, the ALJ noted that x-rays of the lumbar spine are normal and that although Hartigan complains of neuropathy, EMG testing performed in October 2011 was essentially normal. Inconsistency between objective medical evidence and nonmedical testimony is a proper consideration in the credibility analysis.[38] Thus, the lack of objective medical evidence is just one factor supporting the ALJ's credibility findings.

The ALJ also addressed Hartigan's treatment for pain relief and medication use. With regard to treatment, the ALJ noted that Hartigan improved with conservative treatment including ice, medication, and chiropractic treatment. With regard to his medication use, the ALJ noted that Hartigan was prescribed morphine but that there was no evidence in the record that he continues to use this medication or if his symptoms have reduced with continued healing.

---

[37] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted).

[38] *Kepler*, 68 F.3d at 391.

Hartigan asserts that it was error for the ALJ to rely on this reasoning in support of his credibility determination. However, it is the claimant's burden to furnish evidence of disability.[39] Hartigan is represented by counsel. If he is continuing to take such medication, he had every opportunity to provide the necessary documentation for it. Furthermore, Hartigan's lack of evidence regarding his morphine use is not the only evidence the ALJ noted for this factor. He also noted that Hartigan has a long history of medication noncompliance and that although he states he cannot afford medical treatment and prescription medication, he smokes one to two packs of cigarettes a day. Thus, the ALJ's findings provide substantial evidence for his credibility determination.

The ALJ also noted that during his examination with a treating physician, Hartigan's symptoms changed, as well as the distribution of symptomatic areas on his body, suggesting that he was enhancing the severity of his symptoms to generate medical records for his disability claims. Hartigan takes issue with this statement, arguing that no physician of record reported that he was exaggerating his symptoms. The Court concedes that none of the medical evidence explicitly states that Hartigan exaggerated his symptoms. However, the purpose behind the physician's report of a lack of definitiveness of sensory abnormality is to raise different etiology for that finding, including exaggeration. The ALJ reasonably weighed this finding, along with other factors, in assessing Plaintiff's credibility.[40] Therefore, the Court will not reverse the ALJ's credibility finding on this issue.

---

[39] *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

[40] *See* 20 C.F.R. 404.1529(c)(4), 416.929(c)(4) (stating that the ALJ may weigh inconsistencies in the evidence when determining the extent to which pain symptoms affect the claimant's capacity to perform basic work activities).

The ALJ also discussed Hartigan's activities of daily living, finding that he retained the ability to drive, cook, clean, do household chores, sleep four hours uninterrupted, and carry a gallon of milk. Hartigan argues that the ALJ did not take into account the duration and nature of his daily activities and that the ALJ's findings are mere generalities. However, the record shows that Hartigan performed light household chores, prepared simple meals, engaged in airbrushing mailboxes, operated a computer, drove an automobile at least once a week, and that he had ridden a motorcycle at least once since his alleged onset date. Thus, in conjunction with the other evidence cited by the ALJ, the Court finds that the ALJ's reliance on this evidence supports his credibility analysis.

To the extent Hartigan takes further issue with the ALJ's credibility analysis, the fact remains that the ALJ articulated numerous specific reasons for finding Hartigan not fully credible and these reasons are affirmatively linked to evidence in the record. As stated above, the Court will not reweigh the evidence or substitute its own judgment for that of the ALJ.[41] Accordingly, Hartigan's assertion that the ALJ failed to conduct a proper credibility analysis is without merit.

## C.     RFC Assessment

Finally, Hartigan alleges that the ALJ erred in formulating his RFC. "Residual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[42] Under SSR 96-8p, an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing

---

[41] *Oldham*, 509 F.3d at 1257-58.

[42] *White v. Barnhart*, 287 F.3d 903, 906 (10th Cir. 2001).

specific medical facts . . . and nonmedical evidence."[43] In addition, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence in the record.[44] An ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[45]

Here, the ALJ formulated the following RFC for Hartigan:  He can perform sedentary work except that he can occasionally lift ten pounds.  He can sit for approximately six hours in an eight-hour day, and he can stand or walk for approximately two hours in an eight-hour day, with normal breaks.  He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  He can never climb ladders, ropes, and scaffolds.  He can perform occasional overhead reaching with the dominant, right, upper extremity.

Hartigan offers several reasons as to why the ALJ's RFC assessment is flawed but these reasons simply restate his previous argument as to why the ALJ erred in his credibility analysis, and thus, they are unpersuasive.  For example, Hartigan asserts that the ALJ erred in relying on the fact that there were no records indicating whether he continued to require morphine if his symptoms had reduced with continued healing.  As previously noted, it is Hartigan's burden to establish evidence of a disability,[46] and he had every opportunity to document the record with such evidence if necessary.

---

[43] *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996).

[44] *Id.*

[45] *Id.*

[46] *Yuckert*, 482 U.S. at 146 n.5.

Hartigan also asserts that the ALJ erred in finding he could work within the RFC assessment based on his activities of daily living. Specifically, Hartigan takes issue with the ALJ's finding that he could "occasionally lift 10 pounds." He claims that he did not testify at the hearing that he could "occasionally" lift a gallon of milk and the ALJ did not ask him how many times he could lift a gallon of milk. However, a review of the transcript reveals that the ALJ asked him how much he could lift "on a regular basis," and Hartigan responded "a gallon of milk." Given that "regular" lifting is much more than "occasional" lifting, the Court finds that the ALJ did not err in including this limitation in the RFC.

The ALJ's decision discusses the medical record and nonmedical evidence at length. The RFC assessment is supported by the objective medical evidence, the weight of the opinion evidence, Hartigan's activities of daily living, and Hartigan's work history. Thus, the Court finds that the ALJ's RFC assessment is supported by substantial evidence in the record, and declines to reverse or remand the Commissioner's decision on this basis.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 14th day of December, 2015.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE